J-S48014-24

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: A.B., JR., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.M.B., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2353 EDA 2024 |

Appeal from the Order Entered August 2, 2024
In the Court of Common Pleas of Wayne County
Civil Division at No:  CP-64-DP-0000032-2022

| | | |
|---|---|---|
| IN THE INTEREST OF: A.B., JR., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: A.M.B., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2354 EDA 2024 |

Appeal from the Decree Entered July 30, 2024
In the Court of Common Pleas of Wayne County
Civil Division at No:  2024-00009

| | | |
|---|---|---|
| IN THE INTEREST OF: L.B., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| APPEAL OF: A.M.B., FATHER | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 2355 EDA 2024 |

Appeal from the Order Entered August 2, 2024
In the Court of Common Pleas of Wayne County
Civil Division at No: CP-64-DP-0000033-2022

| | | |
|---|---|---|
| IN THE INTEREST OF: L.B., A MINOR | : : : : : : : : : : : : : : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| APPEAL OF: A.M.B., FATHER | | |
| | | No. 2356 EDA 2024 |

Appeal from the Decree Entered July 30, 2024
In the Court of Common Pleas of Wayne County
Civil Division at No: 2024-00010

BEFORE: STABILE, J., NICHOLS, J., and BENDER, P.J.E.

MEMORANDUM BY STABILE, J.: **FILED APRIL 21, 2025**

A.M.B. ("Father") appeals from the July 30, 2024, decrees that involuntarily terminated his parental rights to his son, A.B., Jr., born in September of 2019, and daughter, L.B., born in January of 2022 (collectively, "the Children").[1] Father also appeals from the August 2, 2024 orders that changed the Children's permanency goals from reunification to adoption. After careful review, we affirm the involuntary termination decrees and dismiss the appeal from the goal change orders as moot.

The certified record reveals the following relevant facts and procedural history. This family came to the attention of Wayne County Children and

_____

[1] The parental rights of A.L.H., the Children's mother ("Mother") (collectively with Father, "Parents"), were also involuntarily terminated by the same decrees. Mother separately appealed the involuntary termination decrees and goal change orders at 2357-60 EDA 2024, which we address in a separate memorandum.

Youth Services ("CYS" or "the Agency") after the Agency received a report in approximately November of 2022, alleging that, *inter alia*, Parents used methamphetamines in the family home. Upon investigation, Parents each admitted to methamphetamine use. The Agency implemented an out-of-home safety plan wherein the Children were placed with a maternal aunt. On December 6, 2022, Parents entered into a voluntary agreement with CYS for the placement of the Children with a foster care family.

On January 4, 2023, the court adjudicated the Children dependent. Thereafter, the court established the Children's respective permanency goals as reunification. In furtherance of this goal, Father was ordered to, *inter alia*, complete a drug and alcohol evaluation and follow all resulting recommendations.

The court placed the Children with a new kinship resource on January 7, 2023. On May 27, 2023, the Children were moved to their fourth placement with pre-adoptive foster parents, M.M. and A.M. ("Foster Parents"), where they remained at the time of the subject proceedings.

While the record is silent as to whether Father completed the court-ordered drug and alcohol evaluation, he successfully completed an inpatient rehabilitation program and stepped down to a halfway house in 2023. *See* N.T., 7/23/24, at 60; CYS Exhibit 1 at 10. Father relapsed on methamphetamines, however, both in February and April of 2024. *See* N.T., 7/23/24, at 22, 28, 58; CYS Exhibit 1 at 10. He was arrested for a parole

violation following the April relapse and remained incarcerated until June 20, 2024. *See* N.T., 7/23/24, at 28, 58; CYS Exhibit 1 at 10.

On April 23, 2024, CYS filed petitions that included, *inter alia*, a request to change the Children's permanency goals from reunification to adoption. Two days later, on April 25, 2024, the Agency filed petitions for the involuntary termination of Father's parental rights to the Children pursuant to 23 Pa.C.S.A. § 2511(a)(2), (5), and (b). The orphans' court held a combined evidentiary hearing on the petitions on July 23, 2024. At the time of these proceedings, the Children, then four and two years old, respectively, had been in CYS custody for twenty-two months. The Children were represented by their court-appointed guardian *ad litem* ("GAL"), Lindsay Collins, Esquire.[2] Father

_____

[2] Our Supreme Court has mandated that this Court conduct *sua sponte* review to ensure that orphans' courts have properly appointed counsel to represent the legal interests of children in contested termination proceedings in conformity with 23 Pa.C.S.A. § 2313(a). *See In re Adoption of K.M.G.*, 240 A.3d 1218, 1234-36 (Pa. 2020). When counsel is appointed to serve as both a child's legal interest counsel and GAL, this Court must also *sua sponte* review whether "the orphans' court determined that the child's best interests and legal interests did not conflict." *Id.* at 1236. It is well-established "that a single attorney cannot represent a child's best interests and legal interests if those interests conflict." *Id.* (citing *In re T.S.*, 192 A.3d 1080, 1082 (Pa. 2018).

Our review of the certified record in the instant appeals reveals that the orphans' court did not issue a separate order appointing the GAL to the dual representation of the Children's best and legal interests in the termination proceeding. Consequently, no conflict determination was made.

We emphasize that our Supreme Court has placed the onus squarely and solely upon the orphans' courts to make these conflict determinations. *See*
*(Footnote Continued Next Page)*

- 4 -

was present and represented by counsel. CYS presented the testimony of its caseworker Brianna Clark and proffered two exhibits, which the court admitted without objection. Father testified on his own behalf.

By decrees dated and entered July 30, 2024, the orphans' court involuntarily terminated both Mother's and Father's parental rights to the Children. In addition, pursuant to the orders dated July 30, 2024, and entered on August 2, 2024, the court changed the Children's permanency goals from reunification to adoption.

Father timely filed separate notices of appeal and concise statements of errors complained of on appeal pursuant to Pa.R.A.P. 1925(a)(2)(i) and (b). The orphans' court filed its Rule 1925(a) opinion on September 18, 2024, which directed this Court to its July 30, 2024 opinion, which accompanied the

---

**K.M.G.**, 240 A.3d at 1236. These findings must typically be conducted **before** counsel's appointment and should appear within the orders appointing counsel. **See id.** (noting that our inquiry concerning a conflict finding "can be addressed by a review of the orphans' court order (or lack thereof) appointing counsel").

Our Supreme Court has explicitly forbidden *sua sponte* appellate review of the factual inquiry of whether the record shows that an attorney appointed to the dual role "had a conflict in representing both a child's legal interests and best interests." **Id.** Accordingly, this Court remanded to the orphans' court with instructions for it to issue a definitive finding concerning any potential conflict in the Children's legal and best interests. **See** Remand Order, 2/26/25, at 3-5. In its response, the orphans' court affirmed that no conflict existed between the Children's best and legal interests. **See** Supplemental Statement of Reasons, 3/5/25, at 1. Thus, we find no structural error.

subject decrees and orders. On October 2, 2024, this Court *sua sponte* consolidated Father's multiple appeals pursuant to Pa.R.A.P. 513.

On appeal, Father presents the following issues for our review:

1. Whether the [orphans'] court erred as a matter of law in terminating the parental rights of [] Father.

2. Whether the [orphans'] court erred as a matter of law in changing the goal from return home to parent or guardian to adoption.

Father's Brief at 7.[3], [4] We will begin by addressing Father's first claim concerning the orphans' court's termination decrees.

Our standard of review in this context is well-established:

In cases concerning the involuntary termination of parental rights, appellate review is limited to a determination of whether the decree of the termination court is supported by competent evidence. When applying this standard, the appellate court must accept the trial court's findings of fact and credibility determinations if they are supported by the record. Where the trial court's factual findings are supported by the evidence, an appellate court may not disturb the trial court's ruling unless it has discerned an error of law or abuse of discretion.

An abuse of discretion does not result merely because the reviewing court might have reached a different conclusion or the facts could support an opposite result. Instead, an appellate court may reverse for an abuse of discretion only upon demonstration of manifest unreasonableness, partiality, prejudice, bias, or ill-will. This standard of review reflects the deference we pay to trial courts, who often observe the parties first-hand across multiple hearings.

_____

[3] We have reordered Father's issues for ease of disposition.

[4] We note with displeasure that the Children's GAL did not participate in the instant appeal. The GAL advocated for termination of Parents' parental rights at the conclusion of the hearing. *See* N.T., 7/23/24, at 74-76.

> In considering a petition to terminate parental rights, a trial court must balance the parent's fundamental right to make decisions concerning the care, custody, and control of his or her child with the child's essential needs for a parent's care, protection, and support. Termination of parental rights has significant and permanent consequences for both the parent and child. As such, the law of this Commonwealth requires the moving party to establish the statutory grounds by clear and convincing evidence, which is evidence that is so clear, direct, weighty, and convincing as to enable a trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.

*Interest of M.E.*, 283 A.3d 820, 829-30 (Pa. Super. 2022) (cleaned up).

The involuntary termination of parental rights is governed by Section 2511 of the Adoption Act, which calls for a bifurcated analysis that first focuses upon the "eleven enumerated grounds" of parental conduct that may warrant termination. *See id.* at 830; *see also* 23 Pa.C.S.A. § 2511(a)(1)-(11). If the orphans' court determines the petitioner has established grounds for termination under one of these subsections by "clear and convincing evidence," the court then assesses the petition pursuant to Section 2511(b), which focuses upon the child's developmental, physical, and emotional needs and welfare. *See In re T.S.M.*, 71 A.3d 251, 267 (Pa. 2013); *see also* 23 Pa.C.S.A. § 2511(b).

This Court need only agree with the orphans' court's determination as to any one subsection of Section 2511(a), in addition to Section 2511(b), in order to affirm termination. *See In re B.L.W.*, 843 A.2d 380, 384 (Pa. Super. 2004) (*en banc*). For the reasons discussed *infra*, we conclude that the

J-S48014-24

certified record supports the termination decrees pursuant to 23 Pa.C.S.A. § 2511(a)(5) and (b), which provide as follows:[5, 6]

> **(a) General Rule.**—The rights of a parent in regard to a child may be terminated after a petition filed on any of the following grounds:
>
> . . .
>
> (5) The child has been removed from the care of the parent by the court or under a voluntary agreement with an agency for a period of at least six months, the conditions which led to the removal or placement of the child continue to exist, the parent cannot or will not remedy those conditions within a reasonable period of time, the services or assistance reasonably available to the parent are not likely to remedy the conditions which led to the removal or placement of the child within a reasonable period of time and termination of the parental rights would best serve the needs and welfare of the child.
>
> . . .
>
> **(b) Other considerations.**—The court in terminating the rights of a parent shall give primary consideration to the developmental, physical and emotional needs and welfare of the child. The rights of a parent shall not be terminated solely on the basis of environmental factors such as inadequate housing, furnishings, income, clothing and medical care if found to be beyond the control of the parent. With respect to any petition filed pursuant to subsection (a)(1), (6) or (8), the court shall not consider any efforts by the parent to remedy the conditions described therein which are first initiated subsequent to the giving of notice of the filing of the petition.

---

[5] Pursuant to this Court's February 26, 2024 remand order, noted *supra*, the orphans' court additionally filed a supplemental Rule 1925(a) opinion clarifying that it terminated Father's parental rights under Sections 2511(a)(2) and (5). *See* Supplemental Statement of Reasons, 3/5/25, at 1-5.

[6] Given our disposition as to Section 2511(a)(5), we need not review, and further make no conclusions as to, the orphans' court's findings pursuant to Section 2511(a)(2). *See B.L.W.*, 843 A.2d at 384.

- 8 -

23 Pa.C.S.A. § 2511(a)(5), (b).

In order to satisfy the requirements of Section 2511(a)(5), the petitioning party must produce clear and convincing evidence to establish: (1) the child has been removed from parental care for at least six months; (2) the conditions that lead to the child's removal or placement continue to exist; (3) the parent(s) cannot or will not remedy the conditions which led to removal or placement within a reasonable period of time; (4) the services reasonably available to the parent(s) are unlikely to remedy the conditions which led to removal or placement within a reasonable period of time; and (5) termination of parental rights would best serve the needs and welfare of the child. *See In re B.C.*, 36 A.3d 601, 607 (Pa. Super. 2012).

If the orphans' court concludes that adequate grounds for termination exist pursuant to Section 2511(a), the court then turns to Section 2511(b), which requires that it "give primary consideration to the developmental, physical and emotional needs and welfare of the child." 23 Pa.C.S.A. § 2511(b); *see also T.S.M.*, 71 A.3d at 267. Our Supreme Court has generally outlined this inquiry as follows:

> [C]ourts should consider the matter from the child's perspective, placing her developmental, physical, and emotional needs and welfare above concerns for the parent.
>
> Accordingly, the determination of the child's particular developmental, physical, and emotional needs and welfare must be made on a case-by-case basis. We have observed the law regarding termination of parental rights should not be applied mechanically but instead always with an eye to the best interests and the needs and welfare of the particular children

involved. Thus, the court must determine each child's specific needs.

Moreover, the child's emotional needs and welfare include intangibles such as love, comfort, security, and stability. As further guidance, we have identified factors, *i.e.*, specific needs and aspects of the child's welfare, that trial courts must always consider. The courts must consider whether the children are in a pre-adoptive home and whether they have a bond with their foster parents. And, if the child has any bond with the biological parent, the court must conduct an analysis of that bond, which is not always an easy task.

*Interest of K.T.*, 296 A.3d 1085, 1105-06 (Pa. 2023) (internal citations, quotations, and footnotes omitted).

The Court further explained that "[i]t is only a necessary and beneficial bond, after all, that should be maintained." *Id.* at 1109. The "severance of a necessary and beneficial relationship [is] the kind of loss that would predictably cause 'extreme emotional consequences' or significant, irreparable harm." *Id.* at 1109-10. Bond, permanency, stability, and all other intangibles are "all of 'primary' importance in the Section 2511(b) analysis." *Id.* at 1109. The extent of the "bond-effect analysis necessarily depends on the circumstances of the particular case." *In re Adoption of J.M.*, 991 A.2d 321, 324 (Pa. Super. 2010).

It is within the province of the orphans' court to "consider the totality of the circumstances when performing a needs and welfare analysis." *M.E.*, 283 A.3d at 839. Further, this Court has clarified that it is "within the discretion of the orphans' court to prioritize the safety and security" of children "over their bonds with their parents." *Id*. Thus, we will not disturb such an

assessment if the orphans' court's factual findings are supported by the record. *See id.*

Turning to Father's first issue with respect to Section 2511(a), he contends that the orphans' court abused its discretion based on insufficiency of the evidence. *See* Father's Brief at 19. Specifically, Father argues that the record was devoid of evidence that the conditions that led to the Children's removal continued to exist. *See id.* Father also contends that the record contains no evidence that termination "promoted the best interests" of the Children. *Id.* We disagree.

The evidence overwhelmingly demonstrates that Father has not overcome his illegal substance use, which was the cause of the Children's removal from his care. The Agency became involved with this family because Father "was actively using methamphetamines . . . while [the Children] were in the home." Order of Adjudication, 1/6/23, at 1. Father testified, and the documentary evidence corroborates, that he successfully completed an inpatient rehabilitation program and stepped down treatment to a halfway house, which was scheduled to end on September 20, 2023. *See* N.T., 7/23/24, at 60; CYS Exhibit 1 at 10. Father, however, was "negatively discharged" the night before the program ended due to a positive screen for alcohol. CYS Exhibit 1 at 10. Thereafter, Father continued with outpatient treatment through Turning Point Alternate Living Solutions ("TPALS"). *See id.* Ms. Clark confirmed that Father attended TPALS until February of

2024. *See* N.T., 7/23/24, at 22; CYS Exhibit 1 at 10. At that time, Father tested positive for methamphetamines. *See* N.T., 7/23/24, at 22; CYS Exhibit 1 at 10. Notwithstanding this positive test, Father denied experiencing a methamphetamine relapse and instead claimed he relapsed on alcohol. *See* N.T., 7/23/24, at 22; CYS Exhibit 1 at 10. Father subsequently refused to participate in drug screens and stopped participating in treatment through TPALS. *See* N.T., 7/23/24, at 22; CYS Exhibit 1 at 10. Subsequently, Father switched his drug and alcohol treatment to Pennsylvania Treatment and Healing ("PATH"). *See* N.T., 7/23/24, at 22; CYS Exhibit 1 at 10.

Ms. Clark testified that Father again relapsed on methamphetamines in April of 2024. *See* N.T., 7/23/24, at 28. Father admitted to methamphetamine use on the night of April 18, 2024, just two months before the subject hearing. *See id.* at 58. Father was arrested for producing a positive drug screen for probation the next day, and Ms. Clark stated he was incarcerated for this violation until June 20, 2024. *See* N.T., 7/23/24, at 28; CYS Exhibit 1 at 10. Ms. Clark further testified that, although he does not have a prescription, Father tested positive for marijuana at his two most recent screens in June and July of 2024. *See* N.T., 7/23/24, at 22; CYS Exhibit 1 at 10. Father confirmed that he illegally uses marijuana "every other day" as he does not have a medical marijuana card. N.T., 7/23/24, at 68-69.

Ms. Clark testified that since Father's release from jail, the Agency was unaware if he was seeking any drug and alcohol treatment. *See id.* at

29. She stated that Father reported to CYS that he had no service providers, and therefore the Agency had no updated information about any treatment he may have been engaging with at the time of the combined hearing. *See id.* at 44-45. Although Father testified that he was re-engaged with PATH after his incarceration, he withheld this information from the Agency. *See id.* at 59, 65-66, 69.

Based on the foregoing, the record evidence clearly and convincingly demonstrates that the conditions of the Children's removal from Father's care, namely his illegal substance use, continued to exist at the time of the subject hearing. *See* N.T., 7/23/24, at 5, 22, 28-29, 44-45, 58, 60, 65-66, 68-69; CYS Exhibit 1 at 10. Therefore, the record undoubtedly supports the orphans' court's finding that the conditions which led to the Children's removal from Father's care continued to exist.

With respect to Father's assertion that the record is devoid of evidence that termination would best serve the Children's needs and welfare, we conclude that the record evidence supports the orphans' court's findings. The record reveals that, since Parents agreed to the out-of-home safety plan, the Children had been moved through three different placements before their current pre-adoptive home due to Father's inability to achieve reunification. Ms. Clark testified that Father has not made the type of substantial progress that "would see the [C]hildren safely and imminently returned" to his care within the three months following the combined hearing. N.T., 7/23/24, at

26.  Indeed, the record confirms that the Children could not be safely returned to Father's care inasmuch as he did not have the requisite level of compliance and progress concerning the successful resolution of the above-discussed conditions that caused the placement of the Children.  **See** N.T., 7/23/24, at 5, 22, 28-29, 44-45, 58, 60, 65-66, 68-69; CYS Exhibit 1 at 10.  The record evidence supports that termination of Father's parental rights would best serve the needs and welfare of the Children.  Accordingly, we discern no abuse of discretion or error of law in the orphans' court's finding that Father's conduct warranted termination pursuant to Section 2511(a)(5).

Turning to Section 2511(b), as Father fails to present any argument concerning the orphans' court's findings, we deem any such arguments are waived.  **See** Father's Brief at 18-20; **see also Commonwealth v. Noss**, 162 A.3d 503, 509 (Pa. Super. 2017) (finding waiver where Appellant failed to develop the issue in his brief) (citing **Lackner v. Glosser**, 892 A.2d 21, 29-30 (Pa. Super. 2006) ("[A]rguments which are not appropriately developed are waived[.]")).  Father's brief is devoid of citations to the record and to pertinent legal authorities regarding Section 2511(b), including completely failing to reference the statute itself.  **See generally** Father's Brief.  This Court has consistently held:

> [I]t is an appellant's duty to present arguments that are sufficiently developed for our review.  The brief must support the claims with pertinent discussion, with references to the record and with citations to legal authorities.  We . . . will not develop arguments on behalf of the appellant.

- 14 -

*In re R.D.*, 44 A.3d 657, 674 (Pa. Super. 2012). Accordingly, we deem this claim to be waived for lack of development. *See Noss*, 162 A.3d at 509; *Lackner*, 892 A.2d at 29-30.

Even if not waived, we would conclude the record supports the orphans' court's finding that termination of Father's parental rights would best serve the Children's needs and welfare pursuant to Section 2511(b). Father was offered regular supervised visitation, either in-person at the Agency when not incarcerated or virtual visitation in accordance with jail policy while incarcerated. The record shows that Father attended fifty-nine of eighty-one offered visits, and that Father's visitation never progressed past supervised at any point during the Children's dependencies. *See* CYS Exhibit 1 at 3; *see generally* Dependency Dockets. Ms. Clark stated that Father's supervised visitation went well until February of 2024, when the Agency saw a "decline" in his visitation quality. N.T., 7/23/24, at 11-12. This corresponds to when Father tested positive for methamphetamines and was "observed under the influence during visits," became aggressive with CYS staff, and began missing visitation. CYS Exhibit 1 at 4; N.T., 7/23/24, at 11-12.

Father resumed in-person supervised visitation after his release from jail in June of 2024, which also went well. *See* N.T., 7/23/24, at 12, 30, 58. Ms. Clark specifically testified that there was a bond between the Children and Father, but she believed that it was in the Children's best interests that the bond be severed, and this decision included consideration for the

Children's needs and welfare. *See id.* at 12-13; CYS Exhibit 1 at 4. Evidence of positive supervised visitation, in and of itself, is not adequate for the orphans' court to find that the bond between Father and the Children was sufficiently "necessary and beneficial," as to preclude the termination of his parental rights. *K.T.*, 296 A.3d at 1109-10. Accordingly, were this issue not waived, we would discern no abuse of discretion or error of law in the orphans' court's conclusion that the Agency met its evidentiary burden pursuant to Section 2511(b).

We now turn to Father's final issue, which challenges the sufficiency of the evidence to change the Children's permanency goals from reunification to adoption. *See* Father's Brief at 11-18. Given our disposition concerning termination, Father's remaining claim concerning his appeal from the goal change orders is moot. *See Interest of A.M.*, 256 A.3d 1263, 1272-73 (Pa. Super. 2021) (finding issues regarding goal change moot in light of affirming the termination of parental rights). Accordingly, we dismiss Father's appeal from the orders which changed the Children's permanency goals to adoption as moot. *See id.*[7]

Thus, we affirm the decrees with respect to the involuntarily termination of Father's parental rights to the Children pursuant to 23 Pa.C.S.A. §

---

[7] Even if not moot, for the reasons we have already discussed throughout this memorandum with respect to termination, the record confirms that changing the Children's respective permanency goals to adoption is in their best interest. *See In re A.B.*, 19 A.3d 1084, 1088-89 (Pa. Super. 2011)).

2511(a)(5) and (b).  We dismiss the appeal from the goal change orders as moot.

Decrees affirmed.  Appeal from goal change orders dismissed as moot.

Judgment Entered.

*Benjamin D. Kohler*

Benjamin D. Kohler, Esq.
Prothonotary

Date: 4/21/2025